UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IDEARC MEDIA LLC,

                              Plaintiff,

v.                                              **DECISION AND ORDER**
                                                       09-CV-1090S

SIEGEL, KELLEHER & KAHN LLP,

                                Defendant.

## I. INTRODUCTION

Plaintiff commenced this diversity action seeking breach of contract damages in excess of $500,000 resulting from Defendant's failure to pay an account balance for advertising in Verizon print directories published by Plaintiff. Pending before this Court are Plaintiff's Motion to Strike and Dismiss the Amended Answer with Counterclaim and to Strike the Jury Demand, (Docket No. 19), and Defendant's Cross-Motion to Dismiss Plaintiff's Motion or, alternatively, for leave to file an Amended Answer (Docket No. 24). Also pending before this Court is Plaintiff's Motion to Supplement its Reply in further support of its Motion to Dismiss and in opposition to Defendant's Cross-Motion (Docket No. 28). For the reasons discussed below, however, this Court determines that this matter is fully briefed without need for any supplement, and oral argument is not necessary.

## II. BACKGROUND

Plaintiff, a Delaware corporation with its principal place of business in Texas, is a publisher of Verizon print directories, and Defendant, a New York limited liability law firm located in Buffalo, has purchased advertising in those directories on multiple occasions since 2004. (Complaint, Docket No. 1, ¶¶ 1, 7, 9, 13, Ex A; Answer, Docket No. 8, ¶¶ 7,

9, 13).  Plaintiff alleges that Defendant's account has not been current since that time. (Complaint ¶ 14).  The parties entered into a Payment Arrangement Proposal on September 18, 2009, in order to "resolve the delinquent yellow pages advertising balance on the account[]." (Complaint ¶15, Ex C; Answer ¶ 15).  Dominic Caravello was listed in the agreement as the sales representative for Plaintiff, and Dennis Kahn was listed as the contact for Defendant.  (Complaint, Ex C).  The Payment Arrangement Proposal provided for Defendant to make six equal payments of $85,492.68 between October 18, 2009 and March 18, 2010, with any additional monthly billing charges paid in accordance with Plaintiff's standard contract payment terms. (Complaint, Ex C). This agreement was signed on behalf of Defendant by Kahn. (Complaint, Ex C). Defendant failed to make the first payment scheduled pursuant to the Payment Arrangement Proposal for October 18, 2009, and failed to tender any payment in response to Plaintiff's correspondence about the delinquency in November 2009.  (Complaint ¶¶ 17, 20; Answer ¶¶ 17, 20).

Plaintiff commenced the instant action in this Court on December 23, 2009, alleging causes of action for breach of contract and account stated. (Complaint ¶¶ 13-37). Attached to the Complaint were agreements for advertising services, denominated "Application[s] for Advertising Services," from 2006 through 2008.  (Complaint, Ex A). Defendant filed and served its original Answer on March 2, 2010, (Answer, Attach 3), and filed a jury demand on March 8, 2010. (Docket No. 11).  On May 28, 2010, Defendant filed an Amended Answer, wherein Defendant asserts for the first time Plaintiff's alleged failure to mitigate damages as an affirmative defense and a fraudulent inducement counterclaim. (Amended Answer ¶¶ 44-55).  With respect to the counterclaim, Defendant specifically alleges that "Caravello made oral representations to [Defendant] that payment of fees for

advertising could be deferred until [Defendant] was able to make such payments." (Amended Answer ¶ 49). In reliance upon these alleged representations, Defendant entered into advertising contracts with Plaintiff. (Amended Answer ¶ 50). Defendant further alleges that when Plaintiff made a demand for full payment on the account in September 2009, "Caravello, again, represented to [Defendant] that this was a formality and that payment could proceed pursuant to the deferred arrangement that had been mutually agreed upon between Mr. Caravello and [Defendant]." (Amended Answer ¶¶ 52-53).

### III. DISCUSSION

**A. The Amended Answer**

Plaintiff moves pursuant to Rules 9(b), 12 (b)(6), and 15 (a) of the Federal Rules of Civil Procedure for an order striking and dismissing with prejudice the Amended Answer with counterclaim.[1] (Docket No. 19). Plaintiff also requests leave to supplement its reply to Defendant's Cross-Motion seeking, inter alia, leave to amend its Answer.[2] (Docket No. 28). Initially, Plaintiff is correct that Defendant's amendment of its answer without leave of the Court was untimely inasmuch as the Amended Answer was filed more than 21 days

---

[1] In support of the Motion to Strike and Dismiss the Amended Answer and to Strike the Jury Demand (Docket No. 19), Plaintiff submitted the Declaration of Susan C. Roney, Esq. (Docket No. 19-2), attached to which are Exhibits 1-7 (Docket Nos. 19-3, 19-4), and a supporting Memorandum of Law (Docket No. 19-5). Defendant filed a Cross-Motion to Dismiss Plaintiff's motion or, alternatively, for Leave to File an Amended Answer (Docket No. 24), in support of which Defendant filed a Memorandum of Law (Docket No. 24-2), the affidavit of Alisa A. Lukasiewicz, Esq., with one Exhibit (Docket No. 24-3), and the affidavit of Dennis A. Kahn (Docket No. 24-3). Plaintiff further filed a Reply/Response Memorandum of Law in further support of its motion and in opposition to Defendant's Cross-Motion. (Docket No. 25).

[2] In support of this motion, Plaintiff submitted the Declaration of Susan C. Roney, Esq., Docket No. 28, attached to which are Exhibit 1, the proposed Supplemental Declaration of Susan C. Roney, Esq., with Exhibits A-E, and Exhibit 2, a proposed Supplemental Memorandum of Law. Defendant filed the Attorney Declaration of Alisa A. Lukasiewicz, Esq., in response (Docket No. 30). In reply, Plaintiff filed an additional declaration from Susan C. Roney, Esq., in further support of the motion to supplement (Docket No. 31).

3

after Defendant served the original Answer. See Fed. R. Civ. P. 15 (a)(1)(A); (a)(2). Defendant concedes as much, (Def's Mem. of Law, Docket No. 24-2, at 6), but nonetheless argues that the Proposed Discovery Plan, filed April 27, 2010, and signed by each party's counsel, constituted "the opposing party's written consent" to an amended filing pursuant to Fed. R. Civ. P. 15 (a)(2). Specifically, defendant points to the language in the Proposed Discovery Plan that " '[a]ll motions to join other parties and to amend the pleadings shall be filed on or before May 28, 2010.'" (Def's Mem. of Law, Docket No. 24-2, at 7 (emphasis in original), quoting Docket Nos. 14; 24-3, Ex 1, ¶ 5 (Proposed Discovery Plan)). Notably, however, the original Answer was served on March 2, 2010, (Docket No. 8-3), thus the 21-day period wherein Defendant could permissibly amend its answer as a matter of course expired on March 23, 2010. Because no pleading could have been amended without leave of this Court at the time the Proposed Discovery Plan was filed on April 27, 2010, (Docket No. 14), this joint submission of the parties clearly requires that all *motions* for leave to amend the pleadings be filed on or before May 28, 2010. The Amended Answer was thus untimely and improperly filed without leave of this Court, and is therefore without legal effect. See generally United States ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293, 296 (5th Cir. 2003)("failure to obtain leave results in an amended [pleading] having no legal effect"); Gaumont v. Warner Bros. Pictures, 2 F.R.D. 45, 46 (S.D.N.Y. 1941)(same); but see Little v. Nat'l Broad. Co., Inc., 210 F.Supp.2d 330, 372 (S.D.N.Y. 2002)(some courts have considered untimely amended pleadings if leave would have been granted and in the absence of prejudice to any party).

Defendant requests in the alternative that the Court grant leave to amend the Answer. (Def's Mem. of Law, Docket No. 24-2, at 13-14). Generally, leave to amend a

pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15 (a) (2). Nonetheless, it is in the sound discretion of this Court "to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Plaintiff responds that leave to amend should be denied because the counterclaim is futile. (Pl's Reply Mem. of Law, Docket No. 25, at 2-8). An amendment is considered futile if the amended pleading would not survive a motion to dismiss, either pursuant to Rule 12 (b)(6) or on some other basis. Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002); McKinney v. Eastman Kodak Co., 975 F. Supp. 462, 465 (W.D.N.Y. 1997). A court considering such a motion to dismiss applies:

> a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, 615 F.3d 97, 114 (2d Cir. 2010), cert denied __ U.S. __, 131 S.Ct. 1502, 179 L.Ed.2d 360 (2011). "A claim has facial plausibility when the [the party asserting a claim or counterclaim] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."

Iqbal, 129 S.Ct at 1949. Further, in making its determination, a court is entitled to consider, as relevant here:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F.Supp.2d 351, 356-357 (S.D.N.Y. 2003)(footnotes omitted), aff'd 396 F.3d 161 (2d Cir. 2005), cert denied 546 U.S. 935 (2005); see Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

Defendant's Amended Answer includes a new counterclaim for fraudulent inducement. (Amended Answer ¶¶ 45-55). To state a claim for fraudulent inducement under either New York or Texas law,[3] "there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." Gosmile, Inc. v. Levine, 81 A.D.3d. 77, 81 (1st Dept 2010), lv dismissed 17 N.Y.3d 782 (N.Y. 2011); see Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 580 (2d Cir. 2005); Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). Further, fraudulent inducement claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9 (b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

---

[3]The terms and conditions applicable to the parties' agreements for advertising services state that Texas law will govern all related disputes. (Complaint, Ex B at 16, 21, § 19). It also provides, however, that venue is proper in Dallas County, Texas, Id.; nonetheless, Plaintiff commenced the action here. Neither party has raised a choice of law issue nor presented any relevant difference between New York and Texas law, and Plaintiff's arguments contain references to both jurisdictions. There is no need for this Court to address the issue sua sponte because, as will be discussed, Defendant cannot sustain a claim of fraudulent inducement in either jurisdiction.

constituting fraud or mistake." Fed. R. Civ. P. 9 (b); see Eaves v. Designs for Finance, Inc., 785 F.Supp.2d 229, 246-247 (S.D.N.Y. 2011).  A party asserting such a claim must therefore " '(1) specify the statements that [he or she] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004), quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993); see United States ex rel Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)(minimal requirements are that the "'who, what, when, where, and how' of the alleged fraud" be set forth" (citation omitted)); see generally Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 125 n 4 (2d Cir. 2001)(noting that dismissal pursuant to Rule 12 (b) (6) has been used to enforce heightened pleading requirements).

As noted above, Defendant alleges that Caravello, Plaintiff's sales representative, "made oral representations to [Defendant] that payment of fees for advertising could be deferred until [Defendant] was able to make such payments," and it was in reliance on those statements that "[Defendant] entered into advertising contracts with Plaintiff." (Amended Answer ¶¶ 47, 49-50).  Further, "[Defendant] would not have entered into advertising contracts with Plaintiff if such representations were not made by Mr. Cavarello." (Amended Answer ¶ 51).  Defendant further alleges that when Plaintiff made its demand in September 2009 for payment in full within six months, "Mr. Caravello, again, represented to [Defendant] that this was a formality and that payment could proceed pursuant to the deferred arrangement that had been mutually agreed upon between Mr. Caravello and [Defendant]." (Amended Answer ¶¶ 52-53). According to Defendant, Caravello made this representation, knowing it to be false, "with the express intent to induce [Defendant] to

continue advertising with Plaintiff." (Amended Answer ¶ 53).  These allegations do not specify when, where or to whom specifically Caravello's allegedly fraudulent statements were made. see Rombach v. Chang, 355 F.3d at 170; Huszar v. Zeleny, 269 F.Supp.2d 98, 105 (E.D.N.Y. 2003)(claims of fraud insufficiently particular where "amended complaint fails to identify when and where the statements were made and does not explain why the statements were fraudulent"); Ebusinessware, Inc. v. Technology Servs. Grp. Wealth Mgmt. Solutions, No. 08 Civ. 09101, 2009 WL 5179535, *11 (S.D.N.Y. 2009)(allegations insufficient where there was no specific statement or omission cited).

      Plaintiff further contends that the counterclaim is barred by the parol evidence rule in light of the merger clause found in the relevant "Application for Directory Advertising Terms and Conditions" ("Terms and Conditions"), which states that Defendant was not relying on any oral representations. (Pl's Mem. of Law, Docket No. 19-5, at 10-13; see Complaint, Ex B at 16, 21 § 22).  Notably, a properly pleaded fraudulent inducement claim may survive despite a merger clause unless there is either a clear disclaimer of reliance on the specific matter in dispute or the merger clause itself was the result of negotiation. See Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006); Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997).  Here, the preprinted assertion in section 22 of the Terms and Conditions states that "no oral or written representation made by the [r]epresentative or other person that purports to modify this Application is binding on [Plaintiff].  Advertiser confirms that Advertiser has not relied upon any such representation in entering into this Application." (Complaint, Ex B at 16, 21 § 22).  This general statement falls within the category of boilerplate merger clauses which will not necessarily preclude a fraudulent inducement claim.  See Wall, 471 F.3d at 416;

Schlumberger, 959 S.W.2d at 181.

Nonetheless, in order to sustain its counterclaim for fraudulent inducement under either New York or Texas law, Defendant must establish, inter alia, that any reliance on the oral representations was justifiable. See Brittan Commc'n Int'l Corp. v. Southwestern Bell Tel. Co., 313 F.3d 899, 906 (5th Cir. 2002), cert denied 538 U.S. 1034 (2003); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Perrotti v. Becker, Glynn, Melamed & Muffly LLP, 82 A.D.3d 495, 498 (1st Dept 2011). Whether or not a party's reliance on a representation was justifiable is typically a question of fact, one that requires consideration of "the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." JP Morgan Chase Bank v. Winnick, 350 F.Supp.2d 393, 406 (S.D.N.Y. 2004); see Stair v. Calhoun, 07-CV-3906, 2009 WL 3259482, *3 (E.D.N.Y. 2009); 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital, 192 S.W.3d 20, 30 (Tex. App. 2005). Where, however, "there is a 'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation, the conflict negates a claim of a reasonable reliance upon the oral representation" as a matter of law. Stone v. Schulz, 231 A.D.2d 707, 707-708 (2d Dept 1996); see DRC Parts & Accessories, LLC v. VM Motori, S.P.A., 112 S.W.3d 854, 858 (Tex. App. 2003)("reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law"); see also Rober J. McRell Assocs., Inc. v. Insurance Co. of N. Am., 677 F.Supp.721, 731 (S.D.N.Y. 1987); Perrotti, 82 AD3d at 498.

Such is the case here. Defendant contends that it was fraudulently induced into advertising contracts based on Cavallero's oral representation that payment for same could

be tendered as funds became available to Defendant. (Amended Answer ¶¶ 49-51). Attached to the Complaint are Applications for Directory Advertising, by which either Dennis Kahn or another representative agreed on behalf of Defendant to pay Plaintiff "the monthly rates shown above in accordance with" the Terms and Conditions. (Complaint, Ex A, Ex B; Amended Answer ¶¶ 7, 9, 10-12, 26 (acknowledging and relying on these documents)). Both the Terms and Conditions as revised in August 2005 and as revised in December 2006 state in Section 3, Payment for Advertising, that "I [Defendant] will pay all bills for advertising in full, without setoff, by the due date " on the bill. (Complaint, Ex B, at 15, 19). Each similarly states in bold that:

> "In addition, if I do not pay any bill within 30 days of the due date on the bill, Publisher [Plaintiff] may require me to pay immediately all unpaid amounts I owe and will owe for all of my advertising in all Directories for the entire time the Print Directories will remain in circulation and for the entire remainder of the term with regard to any Electronic Directories."

Complaint, Ex B at 15, § 3; see Ex B at 19, § 3 (". . . 30 days of the due date, Publisher may issue a bill for, and require me to pay immediately, all unpaid amounts . . .").

Accordingly, even if Cavallero had represented to Defendant that payment for advertising services could be made on the account as funds became available, without regard to monthly billing, any such representations were "directly contradicted by the express, unambiguous terms of a written agreement," and as a matter of law, Defendant could not have justifiably relied on the same. DRC Parts & Accessories, LLC, 112 S.W.3d at 858; Stone v. Schulz, 231 A.D.2d at 707-708. Further, to the extent that the Amended Answer can be read as alleging that Defendant was fraudulently induced into signing the September 2009 Payment Arrangement Proposal, which is not specifically mentioned in the asserted counterclaim, such an argument is patently without merit. Any alleged oral

representation that Defendant could pay as funds became available is belied by the entirety of this agreement, the sole purpose of which is to set a specific payment schedule for Defendant's delinquent account. The counterclaim for fraudulent inducement cannot therefore survive a motion to dismiss, and Defendant's request for leave to amend its answer to include the same is denied.

As a result of this conclusion, Plaintiff's Motion for Leave to Supplement its Reply is denied as moot.  (Docket No. 28).  In any event, denial would still be appropriate. Plaintiff seeks leave to supplement its reply with evidence that Defendant's counterclaim was discharged as a result of a Confirmation Order issued in Plaintiff's Chapter 11 bankruptcy proceeding in Texas. (Declaration of Susan C. Roney, Esq., Docket No. 28-1). Notably, however, a successful claim for fraudulent inducement would operate to vitiate the advertising services agreements giving rise to Defendant's debt to Plaintiff.  See Diamond D Enter. USA, Inc. v. Steinsvaag, 979 F.2d 14, 18 (2d Cir. 1002), cert denied 508 U.S. 951 (1993); Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America,  341 S.W.3d 323, 331 (Tex. 2011). Thus, regardless of whether Defendant would be able to recover any damages, the proposed counterclaim would have acted as an affirmative defense of fraud, a defense also requiring leave of this Court to include on amendment.  See Fed. R. Civ. P. 8 (c)(1).

Accordingly, Defendant's motion for leave to amend is denied with respect to the counterclaim.  Neither party, however, presents any argument with respect to the addition to the Amended Answer of the affirmative defense of failure to mitigate damages.  In the absence of any ground to deny leave, McCarthy, 483 F.3d at 200, leave to amend will be granted in part with respect to this defense. Fed. R. Civ. P. 15 (a).   That part of Plaintiff's

motion seeking to strike the counterclaim from the Amended Answer is denied as moot, and that part purportedly seeking to strike the Amended Answer with respect to the additional defense is denied on the ground that no substantive argument for this relief was offered.

**B. The Jury Demand**

Plaintiff also seeks to strike Defendant's Jury Demand based upon Section 8 of the Terms and Conditions. (Pl's Mem. of Law, Docket No. 19-5 at 14-15).  That section in the August 2005 version provides that in an action in a court of competent jurisdiction regarding amounts due to Plaintiff or amounts paid by Defendant under an Application for Directory Advertising, "Publisher and I each waive any trial by jury." (Complaint Ex B at 16). In the December 2006 version, Section 8 provides that "[i]n any legal proceeding relating to this Application, including an action in court and an arbitration, Publisher and I . . . agree to waive any right we may have to a trial by jury." (Complaint Ex B at 20).  Defendant responds that these provisions were purposely drafted to be subtle and inconspicuous, and as such, there was neither a knowing or willing agreement to waive the right to a jury trial. (Def's Mem. of Law, Docket No. 24-2, at 12-13).

The Seventh Amendment right to a jury is a fundamental one that can only be relinquished knowingly and voluntarily.  See Aetna Ins. Co. v. Kennedy, 301 U.S.389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Nat'l Equip. Rental, Lt. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977).  Courts will indulge every reasonable presumption against such a waiver. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), citing Aetna Ins. Co., 301 U.S. at 393.

The factors a court must consider in determining whether a contractual

> waiver of a right to a jury trial was entered into knowingly and voluntarily include: (1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver.

Morgan Guar. Trust Co. of New York v Crane, 36 F.Supp.2d 602, 603-604 (S.D.N.Y. 1999); see Solutia Inc. v. FMC Corp., 456 F.Supp.2d 429, 454 (S.D.N.Y. 2006).

Here, the Terms and Conditions appear to be preprinted forms in small typeface. (Complaint, Ex B). Nonetheless, the relevant section is written in clear, plain language that a layman could understand. Cf. Nat'l Equip. Rental, Ltd., 565 F.2d at 258 (waiver not knowing and voluntary where relevant provision contained "legalistic words" which a layman would not have known or even suspected constituted a waiver). Further, Dennis Kahn, the owner and managing partner of the defendant law firm, averred that he "was charged with the duty of *negotiating* and signing all of the contracts between [Defendant] and [Plaintiff] for advertising services on behalf of [Defendant]." (Aff. of Dennis A. Kahn, Docket No. 24-4, ¶¶ 1, 24 (emphasis added)). Indeed, Kahn stated that he discussed his objections regarding the payment structure outlined in the Terms and Conditions with Plaintiff's sales representative prior to signing. (Id. at ¶¶ 10, 17-18). In light of the further fact that Kahn is both a representative of a law firm and a lawyer himself, (Def's Mem. of Law, Docket No. 24-2, at 2; Kahn Aff. at ¶¶ 5-6, 24), there is no basis from which to conclude that the relative bargaining power of the parties was weighted in favor of Plaintiff, or that Kahn, Defendant's representative, lacked the business acumen to understand and negotiate these agreements for advertising services, including the provision waiving Defendant's right to a jury trial. see Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., __ F.Supp.2d __, No. 10 Civ. 4373, 2011 WL 3427013, *7 (Aug. 5, 2011)(although

provision not prominent, evidence showed that party opposing waiver had sufficient bargaining power and business acumen to negotiate waiver); cf. Nat'l Equip. Rental, Ltd., 565 F.2d at 258 (gross inequality of power where defendant had no choice but to accept contract in order to receive "badly needed funds").  This Court therefore concludes that Plaintiff has met its burden of establishing that the waiver was knowing and voluntary, and Plaintiff's Motion to Strike the Jury Demand is granted.

## IV.  CONCLUSION

Plaintiff correctly argues that Defendant's Amended Answer was untimely and improperly filed without leave of this court.  Defendant's cross-motion seeking leave to amend its answer is denied with respect to the counterclaim for fraudulent inducement, but granted with respect to the additional defense of failure to mitigate damages.  Plaintiff's motion to strike the Amended Answer is denied, however, its motion to strike the jury demand is granted.   Finally, Plaintiff's motion seeking leave to supplement its reply/response to Defendant's cross-motion for leave to amend is denied as moot.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendant's Cross-Motion seeking Leave to File an Amended Answer (Docket No. 24) is GRANTED in part and DENIED in part, as set forth fully above;

FURTHER, that Plaintiff's Motion (Docket No. 19) is DENIED insofar as it seeks to strike and dismiss the Amended Answer,  as set forth fully above, and GRANTED insofar as it seeks to strike the jury demand;

FURTHER, that Plaintiff's Motion seeking to Supplement its Reply/Response to

Defendant's Motion for Leave to File an Amended Answer (Docket No. 28) is DENIED as moot.

      SO ORDERED.

Dated:  January 16, 2012
         Buffalo, New York

                                  /s/William M. Skretny
                                WILLIAM M. SKRETNY
                                    Chief Judge
                               United States District Judge